1  PHILIP A. MCLEOD, CASB No. 101101
   philip.mcleod@kyl.com
2  JULIE L. TAYLOR, CASB No. 154341
   Julie.taylor@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  450 Pacific Avenue
   San Francisco, California  94133
5  Telephone:     (415) 398-6000
   Facsimile:     (415) 981-0136
6
   Attorneys for Plaintiffs
7  ERIC STRONG and MILLER AVENUE ADVISORS, LLC

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 ERIC STRONG, an individual,              )   Case No. _____
   and MILLER AVENUE ADVISORS, LLC,         )
12 a California limited liability company,  )   **COMPLAINT FOR**
                                            )
13                           Plaintiffs,    )   **1. DECLARATORY RELIEF**
                                            )
14           vs.                            )   **2. UNFAIR BUSINESS PRACTICES-**
                                            )   **VIOLATION OF CAL. BUS & PROF CODE**
15 BRIGHTON JONES, LLC,                     )   **SECTION 17200**
   a Washington limited liability company, and )
16 DOES 1-50, inclusive,                    )
                                            )   JURY TRIAL DEMANDED
17                           Defendants.    )
                                            )
18                                          )
   _____)
19

20         Plaintiffs Eric Strong, an individual and a resident of Mill Valley, California and Miller

21 Avenue Advisors, LLC, a California limited liability company, bring this action for a declaration that

22 the post-employment restrictive covenants and Washington choice of law and venue provisions in the

23 Agreements between Mr. Strong and his former employer, Defendant Brighton Jones LLC, a

24 Washington limited liability company, are void, unlawful and unenforceable under California

25 Business & Professions Code Section 16600 and Labor Code Section 925. Plaintiffs allege as follows:

26                              **I.**

27                        **THE PARTIES**

28         1.       Plaintiff Eric Strong is an individual residing in Mill Valley, California.

                              - 1 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

2.      Plaintiff Miller Avenue Advisors, LLC ("Miller Avenue Advisors") is a California limited liability company, with its only office in Mill Valley, California. Mr. Strong is the co-founder and co-Manager of Miller Avenue Advisors, a registered investment advisor.

3.      Defendant Brighton Jones LLC ("Brighton Jones" or "Defendant") is a Washington limited liability corporation with its principal place of business in Seattle, Washington. Brighton Jones is a registered investment advisor, with branch offices in 12 major U.S. metropolitan areas, including San Francisco.

4.      Plaintiffs do not know the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and therefore allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiffs' injuries as alleged herein were proximately caused by their respective acts and omissions.

## II.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      In October 2011 Mr. Strong began his employment with Brighton Jones in its San Francisco office. On May 10, 2021 Mr. Strong voluntarily resigned his employment with Brighton Jones. On May 26, 2021 counsel for Brighton Jones sent counsel for Mr. Strong a letter threatening to initiate litigation and petition the Court for a temporary restraining order, followed by a permanent injunction if Mr. Strong violated terms of the Business Protection Agreement and Addendum A to the Business Protection Agreement. The letter referred to the prohibitions against Mr. Strong soliciting or accepting business from clients he had served while employed at Brighton Jones. Those clients have assets under management that have generated and are likely to continue to generate fees exceeding the jurisdictional minimum of $75,000. The amount-in-controversy requirement is thus satisfied.

7. Mr. Strong is a resident of California. Miller Avenue Advisors is a California limited liability company with its office in Mill Valley, California. Brighton Jones is a Washington limited liability corporation headquartered in Seattle, Washington. There is therefore complete diversity of citizenship between the plaintiffs and defendants to this action.

8. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 because:

     a. Mr. Strong is a natural person permanently domiciled within this district;

     b. Miller Avenue Advisors is a limited liability company with its only place of business in this district;

     c. Brighton Jones maintains an office in San Francisco where Mr. Strong worked until his resignation;

     d. Plaintiffs are being harmed by Brighton Jones in this judicial district; and

     e. Brighton Jones is subject to personal jurisdiction in this district.

### III.

### NATURE OF THE COMPLAINT

9. Plaintiffs seek a declaration from this Court that the restrictive covenants and the Washington choice of law and venue provisions set forth in Brighton Jones' Business Protection Agreement and Addendum A to the Business Protection Agreement are void and unenforceable under California law. Plaintiffs also seek a declaration enjoining Brighton Jones from attempting to prohibit Mr. Strong from lawfully competing, soliciting and doing business with any present or former client he serviced while employed at Brighton Jones and any other Brighton Jones clients who have or may in the future approach Plaintiffs about doing business. Plaintiffs also seek a declaration that the choice of law and venue provisions in the Business Protection Agreement violate Labor Code Section 925 by requiring Mr. Strong to litigate claims arising in California in the state of Washington, and depriving Mr. Strong of the substantive protections of California law. These declarations are necessary to stop

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

1  Brighton Jones from wrongfully preventing Mr. Strong from working within his chosen profession for

2  Miller Avenue Advisors.

3  <center>**FACTUAL BACKGROUND**</center>

4        10.    Brighton Jones is a financial services firm founded in 1999. In 2011 Brighton

5  Jones hired Mr. Strong to work in its San Francisco office as an Advisor. Mr. Strong worked as an

6  Advisor in the San Francisco office until his resignation on May 10, 2021.  During Mr. Strong's

7  employment with Brighton Jones, he lived in Marin County.  Mr. Strong never worked in Brighton

8  Jones' offices in Washington and he has never lived in Washington.

9        11.    On or about February 14, 2014 Mr. Strong signed Brighton Jones "Business

10  Protection Agreement." He had not reviewed the Business Protection Agreement with counsel and

11  was not represented by counsel when he signed. Paragraphs 11 and 12 stated as follows:

12        **11. Governing Law.**  This BPA shall be construed and enforced in accordance with

13        Washington law without giving effect to its choice of law provisions.

14        **12. Jurisdiction/Venue.**   Employee agrees that the state and federal

15        courts located in King County, Washington shall have exclusive

16        jurisdiction with respect to any dispute arising out of this Agreement,

17        and further agrees to submit to the jurisdiction of the state and federal

18        courts located in King County, Washington; provided that Company

19        may, in its exclusive discretion, seek injunctive relief in another venue

20        when Company believes such action is necessary under the

21        circumstances."

22  A true and correct copy of the Business Protection Agreement between Brighton Jones and Mr. Strong

23  is attached to this Complaint as Exhibit A.

24        12.    On or about September 28, 2017, Mr. Strong signed Brighton Jones' "Business

25  Protection Agreement, Addendum A." He had not reviewed Addendum A with counsel and was not

26  represented by counsel when he signed. Paragraph 4 of Addendum is titled "Non-Solicitation and Non

27  Service"  and contains the following restrictive covenants:

28        **4.**    **Non Solicitation and Non Service.**  As part of your duties for

<center>- 4 -</center>

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

1    the Company you will have access to Confidential Information,

2    including trade secret information about the Company's finances,

3    marketing plans, clients, and relationships with customers. In addition,

4    the Company is granting you access to its knowledge base, its

5    experiences, its people, its name, and all the business contacts it has

6    built, and will build, as part of its business. You understand that the

7    Company would not make this information and these contacts available

8    to you without a commitment from you that you would not use or

9    disclose them in any manner other than for the Company's benefit.

10   Therefore, in consideration of the Company's disclosure of such

11   Confidential Information, trade secret information, and other benefits

12   and consideration provided to you, you agree that during the term of

13   your employment by the Company, and for two (2) years after

14   termination for any reason, you shall not directly or indirectly:

15       (a)     Use Confidential Information and trade secrets to solicit, accept,

16   invite or provide (or attempt to do any of the foregoing), either directly

17   or indirectly, any work, services, goods, employment or otherwise

18   establish a business relationship with, any Client or Prospective Client

19   (where "Client" refers to any person(s), entity(ies), or business(es) with

20   whom the Company has had a contractual or other business relationship

21   at any time in the twenty-four months prior to your termination and

22   where "Prospective Client" refers to any person(s), entity(ies), or

23   business(es) you marketed, prospected, or solicited for business while an

24   employee of the Company any time in the twenty-four months prior to

25   your termination). In the event you breach this provision, the duration of

26   the restrictions shall be extended for a length of time equal to the

27   duration of the breach. The extension of restrictions shall be in addition

28   to any injunction and any other remedies available to the Company.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

1       (b)     Induce or attempt to influence directly or indirectly any person

2       who is employed by, or providing services to, the Company to leave or

3       terminate such employment, or business relationship with the Company

4       or to work for you or any other person or entity.

5       A true and correct copy of Addendum A to the Business Protection Agreement between

6 Brighton Jones and Mr. Strong is attached to this Complaint as Exhibit B.

7       13.     On May 10, 2021 Mr. Strong informed Brighton Jones of his resignation and

8 his commencing employment with Miller Avenue Advisors. Mr. Strong did not take away from

9 Brighton Jones any trade secret information before or at the time of his resignation.

10       14.     After resigning from Brighton Jones, Mr. Strong sent an electronic tombstone

11 style announcement of his new employment with Miller Avenue Advisors to approximately 45

12 personal friends and family members whose accounts he had serviced while working at Brighton

13 Jones. The text of the tombstone announcement was as follows:

14       I am very pleased to announce the launch of my new firm:

15       Miller Avenue Advisors

16       129 Miller Ave Suite 824

17       Mill Valley CA 94941

18       *www.milleraveadvisors.com*

19       email: *eric@milleraveadvisors.com*

20       phone: (415) 307-4113

21       Thank you,

22       Eric Strong

23       *this is an announcement and not a solicitation.

24       15.     On May 26, 2021 counsel for Brighton Jones sent Plaintiffs' counsel a letter

25 accusing Mr. Strong of having violated the terms of the Business Protection Agreement and

26 Addendum A to the Business Protection Agreement and demanding written confirmation that Mr.

27 Strong would abide with the terms of those documents going forward. The letter threatened litigation

28 if Mr. Strong did not comply with the terms of the Business Protection Agreement and its Addendum

- 6 -

A.  A true and correct copy of the letter from Brighton Jones' counsel to Mr. Strong's counsel is attached to this Complaint as Exhibit C.

16.     On June 17, 2021 counsel for Brighton Jones sent counsel for Plaintiffs an unfiled state court complaint titled <u>Brighton Jones, LLC v. Eric Strong and Miller Avenue Advisers, LLC</u>.  The unfiled complaint contains causes of action against Eric Strong and Does 1-10  for breach of contract; defamation; breach of duty of loyalty; fraud in the inducement; and violation of California Penal Code Section 502. It also contains causes of action against both Eric Strong and Miller Avenue Advisors for misappropriation of trade secrets; violation of California Business and Professions Code sections 17200, et seq. and permanent injunction; conversion; and intentional interference with contractual relations. A true and correct copy of Brighton Jones' unfiled state court complaint is attached to this Complaint as Exhibit D.

17.     Paragraph 4 of the Addendum to the Business Protection Agreement, "Non Solicitation and Non Service,"  is void as a matter of public policy under California Business and Professions Code Section 16600 which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The restrictions in the Addendum impose a de facto covenant not to compete and run counter to California's strong public policy favoring employee mobility. The "Non Solicitation and Non Service" section is also void since it contains no geographic limits.

18.     Paragraphs 11 and 12 of the Business Protection Agreement "Governing Law" and "Jurisdiction/Venue" are void under California Labor Code section 925 which provides

(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

(1) Require the employee to adjudicate outside of California a claim arising in California.

(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

(b) Any provision of a contract that violates subdivision (a) is voidable

1    by the employee, and if a provision is rendered void at the request of the

2    employee, the matter shall be adjudicated in California and California

3    law shall govern the dispute.

4        19.    The purpose and effect of the use by Brighton Jones of the illegal and

5    unenforceable "Non Solicitation and Non Service" section of Addendum A to the Business Protection

6    Agreement is to restrict Mr. Strong's employment opportunities and rights of advancement, to restrain

7    him from earning a living in his chosen profession for two years after his resignation and to deprive

8    him of the protections of California law.

9        20.    Paragraphs 11 and 12 of the Business Protection Agreement, "Governing Law"

10   and "Jurisdiction/Venue," unlawfully require Mr. Strong to litigate in King County, Washington under

11   Washington law, even though he lived and worked in California during his employment with Brighton

12   Jones and the claims in dispute arise in California.

13       21.    As an attempt to prohibit or restrict Mr. Strong from accepting business from

14   clients, a number of whom are family or personal friends, any non-solicitation provisions contained in

15   the Agreement are void and unenforceable under Section 16600. Under Section 16600, all post-

16   employment noncompetition covenants are void. <u>AMN Healthcare, Inc. v. Aya Healthcare Svcs., Inc</u>.,

17   28 Cal. App. 5th 923 (2018); <u>Edwards v. Arthur Anderson LLP</u>, 44 Cal. 4th 937 (2008); <u>Application</u>

18   <u>Group, Inc. v. Hunter Group, Inc</u>., 61 Cal. App. 4th 881 (1998).

19                          **<u>FIRST CLAIM FOR RELIEF</u>**

20                             **Declaratory Relief**

21       22.    Plaintiffs hereby allege and incorporate by reference Paragraphs 1 through 20 as

22   though fully set forth herein.

23       23.    This claim seeks declaratory relief pursuant to the Declaratory Judgment Act,

24   28 U.S.C. § 2201.

25       24.    An actual, present and justiciable controversy exists between Plaintiffs and

26   Brighton Jones with respect to the rights and duties of Mr. Strong and Brighton Jones under the terms

27   of the Business Protection Agreement and the Addendum A to the Business Protection Agreement.

28   Plaintiff Miller Avenue Advisors is an interested party in this dispute, as Brighton Jones seeks to

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

1    enforce terms of the Agreement that would prohibit its co-founder and co-Member, Mr. Strong, from

2    pursuing his trade.

3             25.     At a minimum, Plaintiffs contend that Paragraph 4 of Addendum A to the

4    Business Protection Agreement titled "Non Solicitation and Non Service," and Paragraphs 11 and 12

5    of the Business Protection Agreement titled "Governing Law" and "Jurisdiction/Venue" are invalid

6    under California law, and Brighton Jones disagrees. Brighton Jones contends that the non-solicitation

7    and non-service restrictions are enforceable and can be applied to preclude Plaintiffs from accepting

8    business from Brighton Jones clients who chose to move their business to Mr. Strong and Miller

9    Avenue Advisors for a period of two years. Further, even if enforceable, Mr. Strong denies violating

10    the section of the Agreement, whereas, Brighton Jones contends that he violated it because he has

11    communicated with clients he serviced while an employee at Brighton Jones.

12             26.     No adequate remedy other than that herein prayed for exists by which the rights

13    of the parties hereto may be determined.

14             27.     A judicial declaration is necessary and appropriate at this time so that Mr.

15    Strong can practice his chosen profession without fear of reprisal and receive lawfully earned

16    compensation and without exposing him to liability for alleged violations of void and unenforceable

17    provisions of the Business Protection Agreement.

18             28.     Plaintiffs desire a declaration of Mr. Strong's rights under the Business

19    Protection Agreement and Addendum A to the Business Protection Agreement and of Plaintiffs' rights

20    under California law:

21             a.     That Paragraph 4 of Addendum A to the Business Protection

22    Agreement, titled "Non Solicitation and Non Service," is void and unenforceable under California

23    Business and Professions Code section 16600, and as such Mr. Strong is free to pursue his work for

24    Miller Avenue Advisors without such restriction;

25             b.     That Paragraphs 11 and 12 of the Business Protection Agreement titled

26    ""Governing Law" and 'Jurisdiction/Venue" are likewise are void and unenforceable and that

27    California law applies to determine the validity of the restrictive covenants in Addendum A to the

28    Business Protection Agreement; and

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____
KYL4850-9859-6308.1

c.  That Mr. Strong has not unlawfully solicited any Brighton Jones clients and that Miller Avenue Advisors may do business with any present or former client of Brighton Jones, including but not limited to those Mr. Strong serviced while a Brighton Jones employee.

## SECOND CLAIM FOR RELIEF

### Unfair Business Practices-Violation of California Business & Professions Code § 17200

29.  Plaintiffs hereby allege and incorporate by reference Paragraphs 1 through 27 as though fully set forth herein.

30.  The acts and conduct of Brighton Jones as alleged above constitute unlawful, and unfair business acts or practices as defined California Business and Professions Code section 17200 et seq. The Non Solicitation and Non Service terms in Addendum A to the Business Protection Agreement are illegal restraints on trade and are void and unenforceable under Business and Professions Code Section 16600.

31.  Brighton Jones' threats to enforce the Non Solicitation and Non Service terms against Plaintiffs seek to prevent Mr. Strong from working in his chosen profession.  Brighton Jones' conduct is an unlawful and unfair business practice under Business and Professions Code Section 17200. Brighton Jones has acted with the intention to improve its competitive advantage while at the same time preventing Plaintiffs from servicing existing and potential clients. Unless enjoined, Brighton Jones' conduct will cause further irreparable and incalculable injury to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Brighton Jones as follows:

1.  For a declaration that Paragraph 4 of Addendum A to the Business Protection Agreement titled "Non Solicitation and Non Service" is invalid and unenforceable under California Business and Professions Code section 16600;

2.  For a declaration that Paragraphs 11 and 12 of the Business Protection Agreement titled "Governing Law" and "Jurisdiction/Venue" are invalid and unenforceable under California Labor Code section 925 and that California law applies to determine the validity and enforceability of the restrictive covenants contained in the Business Protection Agreement;

- 10 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____

KYL4850-9859-6308.1

3.      For a declaration that Plaintiffs did not unlawfully solicit any Brighton Jones clients and may do business with present or former Brighton Jones clients, including but not limited to those Mr. Strong serviced while he was a Brighton Jones employee;

4.      For costs of suit incurred herein; and

5.      For such other and further relief as the Court deems just and proper.

DATED:  July 9, 2021

PHILIP A. MCLEOD
JULIE L. TAYLOR
KEESAL, YOUNG & LOGAN
Attorneys for Plaintiffs
ERIC STRONG and MILLER AVENUE
ADVISORS, LLC

- 11 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF - Case No. _____

KYL4850-9859-6308.1

# EXHIBIT A

## BUSINESS PROTECTION AGREEMENT

This Business Protection Agreement ("BPA" or "Agreement") is made and executed on _Feb 14_, 2014 between Brighton Jones, LLC, a Washington Limited Liability Company (the "Company", "we" or "us") and _Eric Strom_ ("you" or "Employee").

In consideration and as a precondition to signing this BPA, you are receiving a salary increase and an additional annualized amount of $1,000.00. This BPA sets forth some important terms and provisions governing your work for the Company. Please review the terms below and sign it in the space provided to confirm that you understand and agree to everything it says.

1.      **What Is Covered by This BPA?** This BPA is intended to protect the Company's assets, including, among other things, our confidential and proprietary information, goodwill, relationships with clients, vendors, suppliers, employees and business partners. If you previously signed other similar agreement with the Company, this BPA supersedes and replaces those agreements and is effective as of the date you signed the earlier agreement, except as noted in Section 9 below. If this is the first such document you have signed, it will be effective as of the date set forth above. In either case, however, it applies to all Company confidential and proprietary information learned by or disclosed to you during your employment and all work product resulting from your employment, regardless of when the information was disclosed or the work product created. Also, note that many provisions of this BPA, as indicated below, will continue in effect even after you finish working for the Company.

2.      **Warranties.** You warrant that (a) you are not subject to a non disclosure or similar agreement with any prior employer or entity that would bar you from working for the Company or otherwise interfere with the performance of your duties; or (b) in performing your duties, you will not use any information or materials that are confidential or proprietary to or owned by any former employer(s) or entity(ies).

3.      **Confidential Information.** While working for the Company, you may have access to information that we consider confidential and/or proprietary. You understand that the confidential status of the Confidential Information is highly important to us. "Confidential Information" includes all information that (i) is treated by the Company as confidential or proprietary; (ii) would reasonably be viewed as confidential; (iii) would reasonably be viewed as having value to a competitor; or (iv) we are under an obligation to a third party to keep confidential whether or not disclosed in writing, or other fixed media or disclosed in any other manner (including oral, visual, or electronic disclosure). This includes, among other things, information concerning our investment philosophy, management and economic policies, business strategies, employment policies, operating methods, professional practices or techniques, cost information, technical information, computer programs, customer lists and related information, information about or obtained from clients (including but not limited to client contact information, client net worth, client investments, and client investment strategies), employees, pricing policies and information, know how, plans, specifications calculations, and data regarding projects, marketing and business, legal affairs and financial information and information regarding current or future business opportunities.

You agree that all Confidential Information is the property of the Company and to exercise the highest degree of care in safeguarding Confidential Information against loss, theft, or other inadvertent disclosure, and to take all steps reasonably necessary to maintain the confidentiality of the Confidential Information. You shall not, without the prior written permission of the Company, directly or indirectly, disclose to any person or use in your own or in any other person's business or for the benefit of any person or entity other than the Company, any Confidential Information; or remove any Confidential Information from Company premises without our prior written permission. This important obligation continues even after you leave your employment with the Company. The restrictions on disclosure of Confidential Information do not apply to any information that is generally available to the public (provided you play no role in its entering the public domain). If you become legally obligated to disclose any Confidential Information (such as by a court subpoena), you agree to give us prompt written notice so that we may obtain a protective order or other appropriate remedy, and to disclose only such information as you are legally required to disclose.

You understand that information disclosed by the Company or to which you have access as the result of your employment, including information that does not meet the definition of Confidential Information, may, in addition to the restrictions contained herein, be protected from unauthorized use or disclosure by copyright, patent, and other laws. Nothing in this Agreement shall be interpreted or construed as granting you any right or license to use such information in a manner other than as expressly permitted herein or to limit other protections for such information under contract, statute, or common law. You agree to comply with all applicable laws in the use of information provided by the Company and to defend and hold the Company harmless from any claim arising out of your breach of any provision of this Agreement and to indemnify the Company from and against any loss, claim, damage or liability based in whole or in part on your breach of any provision of this Agreement.

**4.    Non Solicitation and Non Service.** As part of your duties for the Company you will have access to Confidential Information, including information about the Company's finances, marketing plans, clients, and relationships with customers. In addition, the Company is granting you access to its knowledge base, its experiences, its people, its name, and all the business contacts it has built, and will build, as part of its business. You understand that the Company would not make this information and these contacts available to you without a commitment from you that you would not use or disclose them in any manner other than for the Company's benefit. Therefore, in consideration of the Company's disclosure of such information and other benefits and consideration provided to you, you agree that during the term of your employment by the Company, and for two (2) years after termination for any reason, you shall not directly or indirectly:

(a) Solicit, accept, invite or provide (or attempt to do any of the foregoing), either directly or indirectly, any work, services, goods, employment or otherwise establish a business relationship with, any Client or Prospective Client (where "Client" refers to any person(s), entity(ies), or business(es) with whom the Company has had a contractual or other business relationship at any time in the twenty-four months prior to your termination and where "Prospective Client" refers to any person(s), entity(ies), or business(es) you marketed, prospected, or solicited for business while an employee of the

Company any time in the twenty-four months prior to your termination). In the event you breach this provision, the duration of the restrictions shall be extended for a length of time equal to the duration of the breach. The extension of restrictions shall be in addition to any injunction and any other remedies available to the Company.

(b) Induce or attempt to influence directly or indirectly any person who is employed by, or providing services to, the Company to leave or terminate such employment, or business relationship with the Company or to work for you or any other person or entity.

**5.     Liquidated Damages.** If you violate the provisions of Section 4 by directly or indirectly providing services or goods to a Client, then you agree to pay the Company as liquidated damages, and not as a penalty, an amount equal to three (3) times the previous annualized revenue received by the Company for each such Client. If you violate the provisions of Section 4 by directly or indirectly providing services or goods to a Prospective Client, then you agree to pay the Company as liquidated damages, and not as a penalty, three (3) times the annualized fees billed or billable by you or your then-employer to each such Prospective Client. You understand that the Company can elect to collect these damages for any given Client or Prospective Client and will still retain the right to seek injunctive relief against you for any violations related to other Clients or Prospective Clients. If the Company elects liquidated damages, then you agree that such provision is reasonable and agree to pay the damages due promptly and without challenge.

**6.     Reasonableness.** You understand and agree that these provisions are reasonable and do not unduly restrain you from obtaining subsequent employment or injure the public interest. You also understand that at the Company's election it can seek injunctive relief to prevent you from violating this agreement. You further acknowledge and agree that, should the Company have reason to believe that you are engaged in any activities that may be in violation of this or any other provision of this Agreement, the Company shall have the right to notify any subsequent employer, or entity with whom you may be associated, of the rights and obligations contained herein, and provide a copy of this Agreement to the same, and you hereby waive any claim based upon such actions.

**7.     Sufficiency of Consideration.** You agree that in consideration of and as a precondition to a salary increase and $1,000.00 provided by the Company constitutes sufficient consideration for the promises and obligations set forth in this BPA.

**8.     At Will Employment Status/Independent Obligations.** Your employment with the Company is at will, and nothing in this BPA shall change the nature of this relationship. This means that either you or the Company may terminate your employment at any time, with or without cause, and without prior notice. You acknowledge and agree that the restrictions and obligations in this BPA are separate from and independent of any employment agreements between you and the Company and that termination of your employment shall not, under any circumstances, terminate, invalidate or limit your obligations under this BPA.

**9.     Return of Company Property.** Upon the earlier of termination of employment or our demand, you agree to immediately return to us all Confidential Information, including all

tangible and intangible work product containing any Confidential Information and all copies thereof, and all other Company property in your possession or control, whether or not generated by the Company.  Additionally, upon the termination of your employment, you further agree to delete any Confidential Information (including but not limited to client contact information and other information concerning clients) of the Company's contained on any electronic device owned by you, including but not limited to computers, cell phones, smart phones, tablets, thumb drives, and any other electronic storage devices, and you agree to provide a signed verification (in a form acceptable to the Company) to the Company that you have deleted and no longer possess such information, and, at the Company's election and request, immediately provide such devices to the Company for inspection to confirm the same.

10.     **Severability/Waiver/Invalidity.**  If any court finds that any part of this agreement is contrary to law or is invalidated for any reason, that part will not be applicable, but the remaining terms of this BPA shall remain valid and enforceable.  No provision of this BPA may be waived by the Company, unless we do so in writing.  The waiver of any portion of this BPA will be construed narrowly and will not affect our right to enforce any other provision.  In the unlikely event that this entire agreement is somehow found to be unenforceable, then any previous agreements protecting the employer's assets shall be reinstated and become enforceable.  Similarly, if this agreement is deemed not to cover any time periods covered by any previous agreement then those agreements shall be reinstated and become enforceable for periods not covered by this agreement.

11.     **Governing Law.**  This BPA shall be construed and enforced in accordance with Washington law without giving effect to its choice of law provisions.

12.     **Jurisdiction/Venue.**  Employee agrees that the state and federal courts located in King County, Washington shall have exclusive jurisdiction with respect to any dispute arising out of this Agreement, and further agrees to submit to the jurisdiction of the state and federal courts located in King County, Washington; provided that Company may, in its exclusive discretion, seek injunctive relief in another venue when Company believes such action is necessary under the circumstances.

13.     **Attorneys' Fees.**  In any action to enforce this Agreement, including, as applicable, gaining injunctive relief, the prevailing party shall be entitled to recover, in addition to all other relief, its reasonable attorneys' fees, costs and expenses incurred in such enforcement action.

14.     **Irreparable Harm.**  You acknowledge that your failure to comply with any of the terms of this BPA shall irreparably harm the business of the Company and that the Company shall have no adequate remedy at law in the event of such non compliance.   As a result, you agree that, in addition to any other remedies available, the Company shall be entitled to specific performance, including immediate issuance of a temporary restraining order and/or preliminary or permanent injunctive relief enforcing this Agreement, without the necessity of proof of actual damages and without posting bond.

15.     **Successors and Assigns.**  This Agreement shall inure to the benefit of any successor or assign of the Company.

## NOTICE TO EMPLOYEE

It is your responsibility to ensure that you fully understand the terms of this BPA.  If you have any questions or concerns, please ask us and consult an attorney.  By executing this BPA you acknowledge that you have read and understand the terms of this BPA, that you have received the consideration given by the Company for this BPA, that such consideration is sufficient in light of the terms hereof, and that you agree to be bound by the terms of this BPA.

| Employee | Brighton Jones LLC |
|---|---|
| Signature: | By: |
| Name: _Eric Strong_ | Name and Title: _Tyler Mayfield COO_ |
| Date: _2/14/14_ | Date: _2/21/14_ |

# EXHIBIT B

**BRIGHTON JONES**
**BUSINESS PROTECTION AGREEMENT**

**ADDENDUM A**

I acknowledge that the following paragraphs have been updated in the Brighton Jones Business Protection Agreement, effective immediately.

**3.     Confidential Information.**  While working for the Company, you may have access to information that we consider confidential and/or proprietary.   You understand that the confidential status of the Confidential Information is highly important to us.   "Confidential Information" includes all information that (i) is treated by the Company as confidential or proprietary; (ii) would reasonably be viewed as confidential; (iii) would reasonably be viewed as having value to a competitor; or (iv) we are under an obligation to a third party to keep confidential whether or not disclosed in writing, or other fixed media or disclosed in any other manner (including oral, visual, or electronic disclosure).   This includes, among other things, information concerning our investment philosophy; management and economic policies; employment policies; operating methods; professional practices or techniques; and trade secret information, including but not limited to, business strategies, cost information, technical information, computer programs, customer lists and related information, information about or obtained from clients (including but not limited to client contact information, client net worth, client investments, and client investment strategies), account numbers, employees, pricing policies and information, know how, plans, specifications calculations, and data regarding projects, marketing and business, legal affairs and financial information and information regarding current or future business opportunities.

You agree that all Confidential Information is the property of the Company and to exercise the highest degree of care in safeguarding Confidential Information against loss, theft, or other inadvertent disclosure, and to take all steps reasonably necessary to maintain the confidentiality of the Confidential Information.   You shall not, without the prior written permission of the Company, directly or indirectly, disclose to any person or use in your own or in any other person's business or for the benefit of any person or entity other than the Company, any Confidential Information; or remove any Confidential Information from Company premises without our prior written permission.   This important obligation continues even after you leave your employment with the Company.   The restrictions on disclosure of Confidential Information do not apply to any information that is (a) generally available to the public (provided you play no role in its entering the public domain); (b) made in confidence to an attorney, or to a Federal, State or local government official, either directly or indirectly, solely for the purpose of reporting or investigating a suspected violation of law, including without limitation to the U.S. Securities and Exchange Commission about a possible securities law violation in conformity with the "Whistleblower Regulations" under Section 21F of the Securities Exchange Act of 1934 including all related rules and provisions; or (c) in a complaint or other document filed in a lawsuit under seal.   If you become legally obligated to disclose any Confidential Information (such as by a court subpoena), you agree to give us prompt written notice so that we may obtain a protective order or other appropriate remedy, and to disclose only such information as you are legally required to disclose.

Page 1 of 3

v2017_01

You understand that information disclosed by the Company or to which you have access as the result of your employment, including information that does not meet the definition of Confidential Information, may, in addition to the restrictions contained herein, be protected from unauthorized use or disclosure by copyright, patent, and other laws. Nothing in this Agreement shall be interpreted or construed as granting you any right or license to use such information in a manner other than as expressly permitted herein or to limit other protections for such information under contract, statute, or common law. You agree to comply with all applicable laws in the use of information provided by the Company and to defend and hold the Company harmless from any claim arising out of your breach of any provision of this Agreement and to indemnify the Company from and against any loss, claim, damage or liability based in whole or in part on your breach of any provision of this Agreement. Nothing in this Agreement is intended to create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

4.      **Non Solicitation and Non Service.**  As part of your duties for the Company you will have access to Confidential Information, including trade secret information about the Company's finances, marketing plans, clients, and relationships with customers. In addition, the Company is granting you access to its knowledge base, its experiences, its people, its name, and all the business contacts it has built, and will build, as part of its business. You understand that the Company would not make this information and these contacts available to you without a commitment from you that you would not use or disclose them in any manner other than for the Company's benefit.  Therefore, in consideration of the Company's disclosure of such Confidential Information, trade secret information, and other benefits and consideration provided to you, you agree that during the term of your employment by the Company, and for two (2) years after termination for any reason, you shall not directly or indirectly:

(a) Use Confidential Information and trade secrets to solicit, accept, invite or provide (or attempt to do any of the foregoing), either directly or indirectly, any work, services, goods, employment or otherwise establish a business relationship with, any Client or Prospective Client (where "Client" refers to any person(s), entity(ies), or business(es) with whom the Company has had a contractual or other business relationship at any time in the twenty-four months prior to your termination and where "Prospective Client" refers to any person(s), entity(ies), or business(es) you marketed, prospected, or solicited for business while an employee of the Company any time in the twenty-four months prior to your termination). In the event you breach this provision, the duration of the restrictions shall be extended for a length of time equal to the duration of the breach. The extension of restrictions shall be in addition to any injunction and any other remedies available to the Company.

(b) Induce or attempt to influence directly or indirectly any person who is employed by, or providing services to, the Company to leave or terminate such employment, or business relationship with the Company or to work for you or any other person or entity.

<Signature Page to Follow>

Page 2 of 3

v2017_01

## NOTICE TO EMPLOYEE

It is your responsibility to ensure that you fully understand the terms of this BPA.  If you have any questions or concerns, please ask us and consult an attorney.  By executing this BPA you acknowledge that you have read and understand the terms of this BPA, that you have received the consideration given by the Company for this BPA, that such consideration is sufficient in light of the terms hereof, and that you agree to be bound by the terms of this BPA.

| Employee | Brighton Jones LLC |
|---|---|
| Signature: | By: |
| Name: _Eric Strong_ | Name and Title:  _Tyler Mayfield, COO_ |
| Date:  _9.28.17_ | Date:  _9/13/2017_ |

# EXHIBIT C



May 26, 2021

<div align="right">Bryan L. Hawkins<br>
500 Capitol Mall, Suite 1600<br>
Sacramento, CA  95814<br>
D. 916.319.4648<br>
bryan.hawkins@stoel.com</div>

**VIA EMAIL AND U.S. MAIL**

Philip A. McLeod, Esq.
Keesal, Young & Logan
450 Pacific Avenue
San Francisco, CA 94133
Philip.mcleod@kyl.com

**Re:     CONTRACTUAL OBLIGATIONS OWED TO BRIGHTON JONES**

Mr. McLeod:

As you may know, this firm represents Brighton Jones, LLC ("Brighton Jones").  Please allow this letter to continue the discussions you have been having with Tyler Mayfield regarding your client Eric Strong.  Please discontinue any further direct communications with Mr. Mayfield and direct any further communications on this issue to me.

As I understand the facts, at the outset of Mr. Strong's employment with Brighton Jones, he entered into numerous and significant contractual obligations with Brighton Jones, which continue in full force and effect subsequent to his separation of employment.  This includes his Business Protection Agreement, a copy of which I enclose for your reference.  On May 10, 2021, Mr. Strong sent a solicitation email to multiple Brighton Jones clients using Brighton Jones' client list.  The end result of this and likely other improper solicitations by Mr. Strong is a significant loss of clients and revenue to Brighton Jones.

California courts have repeatedly held a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business if the employee is utilizing trade secret information to solicit those customers.  (*See e.g. American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App.3d 622, 634.)  Indeed, such utilization constitutes improper misappropriation under California's Uniform Trade Secrets Act (the "Act").

The Act defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (1) Derives independent economic value, actual or potential, from not being generally known to the public or

May 26, 2021
Page 2

　　　　　to other persons who can obtain economic value from its
disclosure or use; and

　　　　　　　　(2) Is the subject of efforts that are reasonable under
the circumstances to maintain its secrecy."

Numerous California court have concluded that customer lists can qualify for trade secret protection.  (*See Gordon v. Landau* (1958) 49 Cal.2d 690; *Morlige Inc. v. Perry* (1997) 56 Cal.App.4[th] 1514, 1521-1522.)  Moreover, it is undisputed that Brighton Jones' client lists are eligible for these protections considering the time, money, labor, and ingenuity Brighton Jones expended and utilized in creating the lists and the steps it takes to maintain its secrecy, including (1) limiting access to the list, (2) requiring any employees with access to the list to execute Business Protection Agreements, and (3) password protecting electronic copies of the list.

Based on these facts, Mr. Strong's post-resignation email to Brighton Jones' clients using trade secret contact information was absolutely prohibited.  While Mr. Strong may have solicited personal friends and acquaintances, we also have evidence that he also solicited clients he would not have known but for having access to Brighton Jones' confidential and trade secret information.  To this end, and while I also understand that you provided Mr. Mayfield with the names of certain of Mr. Strong's friends and family that he contacted post-resignation, you also concede that Mr. Strong also contacted 10 other Brighton Jones clients.  Given your distinction between Mr. Strong's friends and family and these 10 other clients, we can only assume that Mr. Strong obtained the names and contact information of these 10 other clients from Brighton Jones' trade secret client list.

Also troubling is the fact that we have recently discovered that on February 25, 2021, roughly 3 months prior to his resignation and while he was still employed by Brighton Jones, Mr. Strong organized Miller Avenue Advisors, LLC.  In addition to constituting further proof of Mr. Strong's misconduct, this is also strong evidence that he breached the duties of loyalty he owed to Brighton Jones.

Given these facts and law, Brighton Jones rejects your offer of a mutual release.  Indeed, it is entirely unclear precisely what Brighton Jones receives with a release from your client.  To the contrary, the offer of a mutual release is frankly insulting to the extent your client provides Brighton Jones with a 30-day "head start" before he continues misappropriating Brighton Jones' confidential, proprietary, and trade secret information.

Brighton Jones is in the process of calculating the monetary damage caused by Mr. Strong's misconduct.  Once those calculations are complete, we will be demanding compensation from your client.  At this time, I demand that Mr. Strong confirm in writing the following:

1.　That he has destroyed any of Brighton Jones' confidential and trade secret information still in his possession, including on any electronic devices; and

May 26, 2021
Page 3

    2.   That he will no longer solicit any of Brighton Jones' clients through the use of any confidential and/or trade secret information.

Please also identify the 10 other Brighton Jones clients that your client contacted post-resignation and which you referenced in your May 19, 2021 email to Mr. Mayfield.

If we do not hear from you, learn that Mr. Strong is engaging in further conduct violative of his obligations, or learn that any other of Brighton Jones' clients have left due to his use of confidential or trade secret information, please be advised that Brighton Jones is <u>immediately</u> prepared to take all available legal and equitable action to prevent him from continuing to do so.  This may include, but not be limited to, the following rights and remedies as contemplated by the Business Protection Agreement and California/Federal law:

- Initiating litigation and petitioning the Court for a temporary restraining order, followed by a permanent injunction;

- Seeking monetary damages, including attorney fees;

- Punitive damages;

- Liquidated damages; and

- For such other relief as the Court may deem just and equitable.

Please contact me with any questions.  I look forward to receiving your written response.

Very truly yours,

Bryan L. Hawkins

Enclosure

# BUSINESS PROTECTION AGREEMENT

This Business Protection Agreement ("BPA" or "Agreement") is made and executed on _Feb 14_, 201_4_ between Brighton Jones, LLC, a Washington Limited Liability Company (the "Company", "we" or "us") and _Eric Strong_ ("you" or "Employee").

In consideration and as a precondition to signing this BPA, you are receiving a salary increase and an additional annualized amount of $1,000.00. This BPA sets forth some important terms and provisions governing your work for the Company. Please review the terms below and sign it in the space provided to confirm that you understand and agree to everything it says.

1.    **What Is Covered by This BPA?** This BPA is intended to protect the Company's assets, including, among other things, our confidential and proprietary information, goodwill, relationships with clients, vendors, suppliers, employees and business partners. If you previously signed other similar agreement with the Company, this BPA supersedes and replaces those agreements and is effective as of the date you signed the earlier agreement, except as noted in Section 9 below. If this is the first such document you have signed, it will be effective as of the date set forth above. In either case, however, it applies to all Company confidential and proprietary information learned by or disclosed to you during your employment and all work product resulting from your employment, regardless of when the information was disclosed or the work product created. Also, note that many provisions of this BPA, as indicated below, will continue in effect even after you finish working for the Company.

2.    **Warranties.** You warrant that (a) you are not subject to a non disclosure or similar agreement with any prior employer or entity that would bar you from working for the Company or otherwise interfere with the performance of your duties; or (b) in performing your duties, you will not use any information or materials that are confidential or proprietary to or owned by any former employer(s) or entity(ies).

3.    **Confidential Information.** While working for the Company, you may have access to information that we consider confidential and/or proprietary. You understand that the confidential status of the Confidential Information is highly important to us. "Confidential Information" includes all information that (i) is treated by the Company as confidential or proprietary; (ii) would reasonably be viewed as confidential; (iii) would reasonably be viewed as having value to a competitor; or (iv) we are under an obligation to a third party to keep confidential whether or not disclosed in writing, or other fixed media or disclosed in any other manner (including oral, visual, or electronic disclosure). This includes, among other things, information concerning our investment philosophy, management and economic policies, business strategies, employment policies, operating methods, professional practices or techniques, cost information, technical information, computer programs, customer lists and related information, information about or obtained from clients (including but not limited to client contact information, client net worth, client investments, and client investment strategies), employees, pricing policies and information, know how, plans, specifications calculations, and data regarding projects, marketing and business, legal affairs and financial information and information regarding current or future business opportunities.

You agree that all Confidential Information is the property of the Company and to exercise the highest degree of care in safeguarding Confidential Information against loss, theft, or other inadvertent disclosure, and to take all steps reasonably necessary to maintain the confidentiality of the Confidential Information. You shall not, without the prior written permission of the Company, directly or indirectly, disclose to any person or use in your own or in any other person's business or for the benefit of any person or entity other than the Company, any Confidential Information; or remove any Confidential Information from Company premises without our prior written permission. This important obligation continues even after you leave your employment with the Company. The restrictions on disclosure of Confidential Information do not apply to any information that is generally available to the public (provided you play no role in its entering the public domain). If you become legally obligated to disclose any Confidential Information (such as by a court subpoena), you agree to give us prompt written notice so that we may obtain a protective order or other appropriate remedy, and to disclose only such information as you are legally required to disclose.

You understand that information disclosed by the Company or to which you have access as the result of your employment, including information that does not meet the definition of Confidential Information, may, in addition to the restrictions contained herein, be protected from unauthorized use or disclosure by copyright, patent, and other laws. Nothing in this Agreement shall be interpreted or construed as granting you any right or license to use such information in a manner other than as expressly permitted herein or to limit other protections for such information under contract, statute, or common law. You agree to comply with all applicable laws in the use of information provided by the Company and to defend and hold the Company harmless from any claim arising out of your breach of any provision of this Agreement and to indemnify the Company from and against any loss, claim, damage or liability based in whole or in part on your breach of any provision of this Agreement.

**4.     Non Solicitation and Non Service.** As part of your duties for the Company you will have access to Confidential Information, including information about the Company's finances, marketing plans, clients, and relationships with customers. In addition, the Company is granting you access to its knowledge base, its experiences, its people, its name, and all the business contacts it has built, and will build, as part of its business. You understand that the Company would not make this information and these contacts available to you without a commitment from you that you would not use or disclose them in any manner other than for the Company's benefit. Therefore, in consideration of the Company's disclosure of such information and other benefits and consideration provided to you, you agree that during the term of your employment by the Company, and for two (2) years after termination for any reason, you shall not directly or indirectly:

(a) Solicit, accept, invite or provide (or attempt to do any of the foregoing), either directly or indirectly, any work, services, goods, employment or otherwise establish a business relationship with, any Client or Prospective Client (where "Client" refers to any person(s), entity(ies), or business(es) with whom the Company has had a contractual or other business relationship at any time in the twenty-four months prior to your termination and where "Prospective Client" refers to any person(s), entity(ies), or business(es) you marketed, prospected, or solicited for business while an employee of the

Company any time in the twenty-four months prior to your termination). In the event you breach this provision, the duration of the restrictions shall be extended for a length of time equal to the duration of the breach. The extension of restrictions shall be in addition to any injunction and any other remedies available to the Company.

(b) Induce or attempt to influence directly or indirectly any person who is employed by, or providing services to, the Company to leave or terminate such employment, or business relationship with the Company or to work for you or any other person or entity.

**5. Liquidated Damages.** If you violate the provisions of Section 4 by directly or indirectly providing services or goods to a Client, then you agree to pay the Company as liquidated damages, and not as a penalty, an amount equal to three (3) times the previous annualized revenue received by the Company for each such Client. If you violate the provisions of Section 4 by directly or indirectly providing services or goods to a Prospective Client, then you agree to pay the Company as liquidated damages, and not as a penalty, three (3) times the annualized fees billed or billable by you or your then-employer to each such Prospective Client. You understand that the Company can elect to collect these damages for any given Client or Prospective Client and will still retain the right to seek injunctive relief against you for any violations related to other Clients or Prospective Clients. If the Company elects liquidated damages, then you agree that such provision is reasonable and agree to pay the damages due promptly and without challenge.

**6. Reasonableness.** You understand and agree that these provisions are reasonable and do not unduly restrain you from obtaining subsequent employment or injure the public interest. You also understand that at the Company's election it can seek injunctive relief to prevent you from violating this agreement. You further acknowledge and agree that, should the Company have reason to believe that you are engaged in any activities that may be in violation of this or any other provision of this Agreement, the Company shall have the right to notify any subsequent employer, or entity with whom you may be associated, of the rights and obligations contained herein, and provide a copy of this Agreement to the same, and you hereby waive any claim based upon such actions.

**7. Sufficiency of Consideration.** You agree that in consideration of and as a precondition to a salary increase and $1,000.00 provided by the Company constitutes sufficient consideration for the promises and obligations set forth in this BPA.

**8. At Will Employment Status/Independent Obligations.** Your employment with the Company is at will, and nothing in this BPA shall change the nature of this relationship. This means that either you or the Company may terminate your employment at any time, with or without cause, and without prior notice. You acknowledge and agree that the restrictions and obligations in this BPA are separate from and independent of any employment agreements between you and the Company and that termination of your employment shall not, under any circumstances, terminate, invalidate or limit your obligations under this BPA.

**9. Return of Company Property.** Upon the earlier of termination of employment or our demand, you agree to immediately return to us all Confidential Information, including all

tangible and intangible work product containing any Confidential Information and all copies thereof, and all other Company property in your possession or control, whether or not generated by the Company. Additionally, upon the termination of your employment, you further agree to delete any Confidential Information (including but not limited to client contact information and other information concerning clients) of the Company's contained on any electronic device owned by you, including but not limited to computers, cell phones, smart phones, tablets, thumb drives, and any other electronic storage devices, and you agree to provide a signed verification (in a form acceptable to the Company) to the Company that you have deleted and no longer possess such information, and, at the Company's election and request, immediately provide such devices to the Company for inspection to confirm the same.

10.    **Severability/Waiver/Invalidity.**  If any court finds that any part of this agreement is contrary to law or is invalidated for any reason, that part will not be applicable, but the remaining terms of this BPA shall remain valid and enforceable.  No provision of this BPA may be waived by the Company, unless we do so in writing.  The waiver of any portion of this BPA will be construed narrowly and will not affect our right to enforce any other provision.  In the unlikely event that this entire agreement is somehow found to be unenforceable, then any previous agreements protecting the employer's assets shall be reinstated and become enforceable. Similarly, if this agreement is deemed not to cover any time periods covered by any previous agreement then those agreements shall be reinstated and become enforceable for periods not covered by this agreement.

11.    **Governing Law.**  This BPA shall be construed and enforced in accordance with Washington law without giving effect to its choice of law provisions.

12.    **Jurisdiction/Venue.**  Employee agrees that the state and federal courts located in King County, Washington shall have exclusive jurisdiction with respect to any dispute arising out of this Agreement, and further agrees to submit to the jurisdiction of the state and federal courts located in King County, Washington; provided that Company may, in its exclusive discretion, seek injunctive relief in another venue when Company believes such action is necessary under the circumstances.

13.    **Attorneys' Fees.**  In any action to enforce this Agreement, including, as applicable, gaining injunctive relief, the prevailing party shall be entitled to recover, in addition to all other relief, its reasonable attorneys' fees, costs and expenses incurred in such enforcement action.

14.    **Irreparable Harm.**  You acknowledge that your failure to comply with any of the terms of this BPA shall irreparably harm the business of the Company and that the Company shall have no adequate remedy at law in the event of such non compliance.   As a result, you agree that, in addition to any other remedies available, the Company shall be entitled to specific performance, including immediate issuance of a temporary restraining order and/or preliminary or permanent injunctive relief enforcing this Agreement, without the necessity of proof of actual damages and without posting bond.

15.    **Successors and Assigns.**  This Agreement shall inure to the benefit of any successor or assign of the Company.

## NOTICE TO EMPLOYEE

It is your responsibility to ensure that you fully understand the terms of this BPA. If you have any questions or concerns, please ask us and consult an attorney. By executing this BPA you acknowledge that you have read and understand the terms of this BPA, that you have received the consideration given by the Company for this BPA, that such consideration is sufficient in light of the terms hereof, and that you agree to be bound by the terms of this BPA.

| Employee | Brighton Jones LLC |
|---|---|
| Signature: | By: |
| Name: Eric Strong | Name and Title: Tyler Mayford COO |
| Date: 2/14/14 | Date: 2/21/14 |

Page 5 of 5

# BRIGHTON JONES
## BUSINESS PROTECTION AGREEMENT

### ADDENDUM A

I acknowledge that the following paragraphs have been updated in the Brighton Jones Business Protection Agreement, effective immediately.

**3.      Confidential Information.**  While working for the Company, you may have access to information that we consider confidential and/or proprietary.   You understand that the confidential status of the Confidential Information is highly important to us.   "Confidential Information" includes all information that (i) is treated by the Company as confidential or proprietary; (ii) would reasonably be viewed as confidential; (iii) would reasonably be viewed as having value to a competitor; or (iv) we are under an obligation to a third party to keep confidential whether or not disclosed in writing, or other fixed media or disclosed in any other manner (including oral, visual, or electronic disclosure).   This includes, among other things, information concerning our investment philosophy; management and economic policies; employment policies; operating methods; professional practices or techniques; and trade secret information, including but not limited to, business strategies, cost information, technical information, computer programs, customer lists and related information, information about or obtained from clients (including but not limited to client contact information, client net worth, client investments, and client investment strategies), account numbers, employees, pricing policies and information, know how, plans, specifications calculations, and data regarding projects, marketing and business, legal affairs and financial information and information regarding current or future business opportunities.

You agree that all Confidential Information is the property of the Company and to exercise the highest degree of care in safeguarding Confidential Information against loss, theft, or other inadvertent disclosure, and to take all steps reasonably necessary to maintain the confidentiality of the Confidential Information.   You shall not, without the prior written permission of the Company, directly or indirectly, disclose to any person or use in your own or in any other person's business or for the benefit of any person or entity other than the Company, any Confidential Information; or remove any Confidential Information from Company premises without our prior written permission.   This important obligation continues even after you leave your employment with the Company.   The restrictions on disclosure of Confidential Information do not apply to any information that is (a) generally available to the public (provided you play no role in its entering the public domain); (b) made in confidence to an attorney, or to a Federal, State or local government official, either directly or indirectly, solely for the purpose of reporting or investigating a suspected violation of law, including without limitation to the U.S. Securities and Exchange Commission about a possible securities law violation in conformity with the "Whistleblower Regulations" under Section 21F of the Securities Exchange Act of 1934 including all related rules and provisions; or (c) in a complaint or other document filed in a lawsuit under seal.   If you become legally obligated to disclose any Confidential Information (such as by a court subpoena), you agree to give us prompt written notice so that we may obtain a protective order or other appropriate remedy, and to disclose only such information as you are legally required to disclose.

v2017_01

You understand that information disclosed by the Company or to which you have access as the result of your employment, including information that does not meet the definition of Confidential Information, may, in addition to the restrictions contained herein, be protected from unauthorized use or disclosure by copyright, patent, and other laws.  Nothing in this Agreement shall be interpreted or construed as granting you any right or license to use such information in a manner other than as expressly permitted herein or to limit other protections for such information under contract, statute, or common law.  You agree to comply with all applicable laws in the use of information provided by the Company and to defend and hold the Company harmless from any claim arising out of your breach of any provision of this Agreement and to indemnify the Company from and against any loss, claim, damage or liability based in whole or in part on your breach of any provision of this Agreement.  Nothing in this Agreement is intended to create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

4.      **Non Solicitation and Non Service.**  As part of your duties for the Company you will have access to Confidential Information, including trade secret information about the Company's finances, marketing plans, clients, and relationships with customers.  In addition, the Company is granting you access to its knowledge base, its experiences, its people, its name, and all the business contacts it has built, and will build, as part of its business.  You understand that the Company would not make this information and these contacts available to you without a commitment from you that you would not use or disclose them in any manner other than for the Company's benefit.    Therefore, in consideration of the Company's disclosure of such Confidential Information, trade secret information, and other benefits and consideration provided to you, you agree that during the term of your employment by the Company, and for two (2) years after termination for any reason, you shall not directly or indirectly:

    (a) Use Confidential Information and trade secrets to solicit, accept, invite or provide (or attempt to do any of the foregoing), either directly or indirectly, any work, services, goods, employment or otherwise establish a business relationship with, any Client or Prospective Client (where "Client" refers to any person(s), entity(ies), or business(es) with whom the Company has had a contractual or other business relationship at any time in the twenty-four months prior to your termination and where "Prospective Client" refers to any person(s), entity(ies), or business(es) you marketed, prospected, or solicited for business while an employee of the Company any time in the twenty-four months prior to your termination).  In the event you breach this provision, the duration of the restrictions shall be extended for a length of time equal to the duration of the breach.  The extension of restrictions shall be in addition to any injunction and any other remedies available to the Company.

    (b) Induce or attempt to influence directly or indirectly any person who is employed by, or providing services to, the Company to leave or terminate such employment, or business relationship with the Company or to work for you or any other person or entity.

<div align="center">

**<Signature Page to Follow>**

</div>

v2017_01

## NOTICE TO EMPLOYEE

It is your responsibility to ensure that you fully understand the terms of this BPA.  If you have any questions or concerns, please ask us and consult an attorney.  By executing this BPA you acknowledge that you have read and understand the terms of this BPA, that you have received the consideration given by the Company for this BPA, that such consideration is sufficient in light of the terms hereof, and that you agree to be bound by the terms of this BPA.

| Employee | Brighton Jones LLC |
|---|---|
| Signature: | By: |
| Name: Eric Strong | Name and Title: Tyler Mayfield, COO |
| Date: 9.28.17 | Date: 9/13/2017 |

v2017_01

# EXHIBIT D

| | |
|---|---|
| **From:** | Hawkins, Bryan L. |
| **To:** | McLeod, Philip |
| **Subject:** | Brighton Jones v. Eric Strong: et al. |
| **Date:** | Thursday, June 17, 2021 3:47:13 PM |
| **Attachments:** | image003.png |
| | Draft Complaint - Brighton Jones v. Eric Strong(111320852.1).docx |

Phil,

I am reaching out to make one final effort to resolve this issue.  As previously discussed, in order to resolve this issue my client will require that Mr. Strong agree to cease any further communications with any Brighton Jones clients he learned about during his time with Brighton Jones (with the exception of the 14 friends and family households previously discussed) for a two-year period of time.  We will also require him to execute a document (1) confirming that he no longer possesses any of Brighton Jones' trade secret information and (2) that he won't use any of Brighton Jones' trade secret information.  To the extent he does not agree to these terms by **Monday, June 21, 2021**, my client has instructed me to file the attached Complaint.

Thank you.


**Bryan L. Hawkins** |Partner
**STOEL RIVES LLP** | 500 Capitol Mall, Suite 1600 | Sacramento, CA 95814
Direct: (916) 319-4648 | Fax: (916) 447-4781
bryan.hawkins@stoel.com | Bio | vCard | www.stoel.com



This email may contain material that is confidential, privileged, and/or attorney work product for the sole use of the intended recipient.  Any unauthorized review, use, or distribution is prohibited and may be unlawful.

1   BRYAN L. HAWKINS (SB #238346)
    bryan.hawkins@stoel.com
2   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
3   Sacramento, CA  95814
    Telephone:  (916) 447-0700
4   Facsimile:  (916) 447-4781

5   Attorneys for Plaintiff
    Brighton Jones, LLC, Washington limited liability
6   company

7

8

9                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                               COUNTY OF MARIN

11   BRIGHTON JONES, LLC, a Washington          CASE NO.
     limited liability company,
12                                              **COMPLAINT FOR DAMAGES AND**
                    Plaintiff,                  **FOR A TEMPORARY AND**
13                                              **PERMANENT INJUNCTION**
            v.
14
     ERIC STRONG, an individual; MILLER
15   AVENUE ADVISERS, LLC, a California
     limited liability company; and DOES 1
16   through 10, inclusive,

17                  Defendants.

18

19

20

21

22

23

24

25

26

27

28

Plaintiff BRIGHTON JONES, LLC ("Plaintiff") alleges as follows:

**PRELIMINARY STATEMENT**

Defendant Eric Strong is a former employee of Brighton Jones, LLC, a full service wealth management firm that services clients across the country.   Based on information and belief, beginning at least in February 2021, while still employed by Brighton Jones, Mr. Strong created a new company – Miller Avenue Advisors, LLC - to compete directly against Brighton Jones in the wealth management industry.   During at least this same period of time, and in violation of his Business Protection Agreement with Brighton Jones and both California and Federal law, Mr. Strong began soliciting Brighton Jones' current clients using confidential and trade secret information belonging to Brighton Jones and which he had access to as a Brighton Jones employee.   On information and belief, this misconduct continues to this day and continues to cause financial injury and harm to Brighton Jones.   Additionally, Brighton Jones has learned that Mr. Strong individually and in his capacity as an owner and officer of Miller Avenue Advisors, LLC, has disparaged Brighton Jones regarding its business practices to current and former clients of Brighton Jones as well as other third parties in a *per se* publication of defamatory statements. By this action, Brighton Jones seek damages as well as injunctive relief to put an end to this wholly wrongful misconduct.

**PARTIES**

1.      Plaintiff BRIGHTON JONES, LLC ("Plaintiff") is, and at all relevant time mentioned herein was, a Washington limited liability company with its principal place of business located in Seattle, Washington.  Plaintiff is a full service wealth management firm that services clients across the country.

2.      Plaintiff is informed and believes, and thereupon alleges, that Defendant ERIC STRONG is, and at all relevant times mentioned herein was, an individual residing in Mill Valley, California.  Mr. Strong is a former employee of Brighton Jones.  Plaintiff is further informed and believe, and thereupon allege, that Mr. Strong holds an executive level position with Defendant Miller Avenue Advisors.

3.      Plaintiff is informed and believes, and thereupon alleges, that Defendant MILLER

AVENUE ADVISORS, LLC ("MAA") is, and at all relevant times mentioned herein was, a California limited liability company with its principal place of business located in Mill Valley, California.  Plaintiff is further informed and believe, and thereupon alleges, that Mr. Strong formed MAA while still employed by Brighton Jones and for the primary purpose of competing with Brighton Jones for Brighton Jones' clients.

4.      Plaintiff is ignorant of the true names and capacities of defendants sued in this Complaint as Does 1 through 10, inclusive, and therefore sue these defendants by these fictitious names.  Plaintiff will amend this Complaint to allege the true name or capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences alleged in this Complaint, and Plaintiff's injuries and damages alleged in this Complaint were approximately caused by the acts and/or omissions alleged herein.

5.      Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this complaint each defendant, including any defendant fictitiously named, was acting as the agent, servant, employee, partner, or joint venturer of each other defendant in doing the things alleged, was acting within the course and scope of such agency, employment, partnership, or joint venture with the knowledge and consent or ratification of each other defendant in doing the things alleged, and is responsible in some manner for the damages claimed by Plaintiff.

## **VENUE**

6.      Venue is proper because the misconduct alleged herein took place in Marin County, California and Plaintiff is informed and believes, and thereupon alleges, that the primary Defendants reside and/or have their principal places of business within Marin County.

## **FACTUAL BACKGROUND**

### **Brighton Jones**

7.      Brighton Jones is a full service wealth management firm that services clients across the country.   Brighton Jones' wealth management services are divided into three primary categories, and within each are experts who specialize in particular disciplines. The three categories are:  Your Personal CFO; Tax and Estate Planning; and Retirement Plan Advisors.

Stoel Rives LLP
Attorneys At Law
Sacramento

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

96394990.2 0042482- 00003

**Brighton Jones' Confidential, Proprietary, and Trade Secret Information**

8.      Brighton Jones possesses and employs trade secret, proprietary and confidential information, methods, and techniques in the providing of its services.  Brighton Jones works closely with its clients to understand their specific preferences and concerns and has invested substantial time, energy, and money in fostering these relationships.  Indeed, and given Brighton Jones' exclusive clientele,  its client databases is absolutely critical to its business success and ability to compete effectively.  The information in its client database cannot be duplicated by any of the standardized  programs and/or information available on the public market.  Accordingly, such information is proprietary, a trade secret, and essential to Brighton Jones' competitiveness. The improper use and disclosure of this information would cause substantial injury and harm to Brighton Jones and give any party that improperly received this information an unfair advantage in competing with Brighton Jones.

9.      Brighton Jones has invested a great deal of time, money, and effort developing its database of high wealth clients.  This database has economic value because it is the result of extensive expenditures of time, effort and money, and contains information not generally known within the trade.  The information in these databases also represents substantial research and compilation of existing and prospective client data culled from prior and ongoing working relationships, and is not just an unfocused list of individuals.  Brighton Jones has invested an immeasurable amount of money in developing the proprietary client and target lists and rendering them useful, and Brighton Jones invested a great deal of employee time in developing and making these lists useful.  Brighton Jones has spent and continues to spend a tremendous amount of time and expense to identify, develop and nurture its client contacts.  Prior to being included on its list, Brighton Jones must actively solicit individual contacts, introduce, develop relationships, hope/wait for them to commit to Brighton Jones' services, compete actively for their business and finally be chosen to serve them.  Brighton Jones' growth to-date has been due to its success in providing exemplary service and its clients sharing of these positive experiences with their friends, family, and colleagues.  Brighton Jones' client list has been culled and its use represents a significant barrier to entry to competing in this niche-industry.

10.     Brighton Jones takes great care to ensure the confidentiality of all of this trade secret information, as well as other information pertaining to its internal operations.  The actions taken by Brighton Jones to maintain the confidentiality of this information include, but are not limited to, having each of its employees with access to this information sign and execute an Business Protection Agreements containing confidentiality provisions.  Among other things, these confidentiality provisions:

- Confirm the confidential, proprietary, and trade secret nature of the aforementioned information;
- Prohibit employees from disclosing or misappropriating this confidential, proprietary, and trade secret information;
- Prohibit employees from removing any of Brighton Jones' equipment or property without permission;
- Require employees to return to Brighton Jones any of Brighton Jones' property in their possession at the time of termination or separation from Brighton Jones;
- Prohibit the use of any of this confidential, proprietary, and trade secret information for the solicitation of Brighton Jones' clients or employees; and
- Conducting employee reviews and/or discipline where a breach is or may be discovered.

11.     Prior to beginning work for Brighton Jones, Defendant Eric Strong executed a Business Protection Agreement containing the confidentiality provisions alleged above.

**Brighton Jones Become Aware of Mr. Strong's Active Solicitation of Brighton Jones' Current Clients, and Misappropriation of Brighton Jones' Confidential, Proprietary, and Trade Secret Information**

12.     On or around May 10, 2021, Defendant Eric Strong resigned from his position as Lead Advisor at Brighton Jones.  On that same day, Plaintiff became aware that prior to his departure, he had used Brighton Jones' confidential, proprietary, and trade secret information to contact Brighton Jones' clients and solicit them to discontinue services with Brighton Jones and instead work with him at a new firm – Defendant Miller Avenue Advisors, LLC.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13.     Brighton Jones has also learned that Defendant Eric Strong, individually and/or in his capacity as an officer and owner of Miller Avenue Advisors, LLC, has continued to use Brighton Jones' confidential, proprietary, and trade secret client list to solicit current clients of Brighton Jones.  Indeed, as of the filing of this Complaint, Brighton Jones believes Defendants' unlawful misappropriation has caused Brighton Jones to lose numerous in excess of 13 clients representing loss of revenue in excess of $250,000.00.

14.     Brighton Jones has also learned that Defendants have per se disparaged Brighton Jones to one or more clients of Brighton Jones and on information and belief third parties, stating and inferring that Brighton Jones has engaged in unlawful and/or unethical conduct.

15.     Beginning shortly after Mr. Strong's resignation, Plaintiff and its counsel have engaged in multiple communications with Defendant Eric Strong and his counsel demanding that Defendants cease and desist their unlawful and improper misappropriation.  Defendants, however, have failed to provide the requested assurances and/or compensate Plaintiff for the damages it has incurred.

16.     On or about June 8, 2021, Plaintiff learned for the first time that beginning at least in or about February 2021, and while still employed by Brighton Jones, Defendant Eric Strong created Miller Avenue Advisors to compete with Brighton Jones in the wealth management industry.

**Damages and Irreparable Harm Resulting From Defendants' Conduct**

17.     As of result of Defendants' misappropriation of Brighton Jones' confidential, proprietary, and trade secret information, Brighton Jones has been irreparably damaged as it has lost valuable trade secrets and proprietary information as well as (1) the competitive advantage such information provided and (2) clients and revenue.  Brighton Jones has also suffered other damages including, without limitation, the costs of retaining technical experts to review its systems to assess the extent and impact of the misappropriation, payment of employment costs and expenses to employees while they were concealing and taking critical Brighton Jones information, payment to current employees to investigate and assess Defendants' misconduct, and loss of current work and staff members.

18.     Defendants have significantly benefited and will benefit from their improper and wrongful activities, and gained an unfair business advantage as well.  As a result, Brighton Jones may continue to lose clients, transactions, and revenue and profits that belong to Brighton Jones and Brighton Jones has suffered damage to its reputation all of which are ongoing and in far excess of the jurisdictional minimum of this court.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Defendants Eric Strong and Does 1-10 By Plaintiffs - Count 1)**

19.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 18, above.

20.      On or about February 14, 2014, Plaintiff and Defendants entered into a Business Protection Agreement governing Plaintiff's confidential, proprietary, and trade secret information.  Pursuant to this written agreement, and as relevant to this current action, Defendants agreed to protect any and all of Plaintiff's confidential, proprietary, and trade secret information and not use such information for the benefit of any person or entity other than Plaintiff.  The Agreement also required Defendants to return any and all of Plaintiff's confidential, proprietary, and trade secret information subsequent to Plaintiffs' separation from Plaintiff.  On or about September 13, 2017, Plaintiff entered into an addendum to the Business Protection Agreement.  A true and correct copy of the Agreement, as amended, is attached hereto as **Exhibit A** and incorporated herein.

21.     Plaintiff has performed all conditions, covenants and promises required of it under the Agreement, except for those promises, conditions and covenants not yet due or that have been excused by the acts and omissions of Defendants herein described.

22.     Defendants breached their obligations obligation under the Agreement by, among other things, misappropriating, using, and/or disclosing and retaining, subsequent to Defendants' separation from Plaintiff, Plaintiff's confidential, proprietary, and trade secret information.

23.     As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff has been damaged in an amount to be proven at trial in excess of the jurisdictional limit of this court.  Plaintiff also seek attorneys' fees and treble damages pursuant to the Agreement.

24.     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Defamation Per Se Against Defendants Eric Strong and Does 1-10)

25.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 24, above.

26.      On information and belief, Defendants have communicated false and defamatory statements about Plaintiff to Plaintiff's employees and its clients, including, without limitation, defamatory statements regarding Plaintiff's business practices.

27.     The clients and other third persons reasonably understood that the communication was about Plaintiff and had a defamatory meaning regarding Plaintiff's business practices.

28.     Defendants failed to use reasonable care to determine the truth or falsity of the statements, and in fact knew and knows the truth to be the opposite.

29.     The above statements communications caused per se damages and actual damage to Plaintiff's business and reputation in an amount to be determined at trial.

30.     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Misappropriation of Trade Secrets - California UTSA and Preliminary and Permanent Injunction Against All Defendants)

31.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 30, above.

32.     Plaintiff possesses trade secrets as defined by California's Uniform Trade Secrets Act, Civil Code sections 3426-3426.11.

33.     These trade secrets include, but are not limited to Plaintiff's database of clients. Collectively this information, regardless of the media on which it is stored, including corporate information stored on, within, or passing through Plaintiff's technology resources, is referred to herein as the "Trade Secrets."

34.     The Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from

1    its disclosure or use.

2         35.    Plaintiff has taken reasonable measures to maintain the secrecy of the Trade

3    Secrets, including but not limited to, maintaining the information in a secure manner in Plaintiff's

4    facilities, including but not limited to, the usage of computer security passwords, building

5    security personnel and requiring that Plaintiff's employees sign and execute Business Protection

6    Agreements containing confidentiality provisions expressly prohibiting the misuse of the Trade

7    Secrets.

8         36.    Defendants have misappropriated and threaten to further misappropriate the Trade

9    Secrets (and/or aided and abetted each other in this misconduct) by: (1) acquiring Plaintiff's

10   Trade Secrets with knowledge or reason to know that the Trade Secrets were acquired by

11   improper means; (2) disclosing, using, or threatening to use the trade secrets which they acquired

12   by improper means without Plaintiff's express or implied consent; (3) disclosing, using, and

13   threatening to use the Trade Secrets without Plaintiff's consent with knowledge or reason to know

14   that the Trade Secrets are proprietary to Plaintiff; and (4) soliciting and/or attempting to solicit

15   Plaintiff's clients by use of the Trade Secrets.

16        37.    Defendants have been using the Trade Secrets with knowledge or reason to know

17   that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their

18   secrecy and using the Trade Secrets derived through or from individuals who had obligations to

19   Plaintiff to maintain the information as confidential.  In misappropriating Plaintiff's Trade

20   Secrets, Defendants have acted willfully and with the intent to cause injury to Plaintiff and/or

21   with a willful and conscious disregard of Plaintiff's rights and with deceit or concealment of

22   material facts regarding his misconduct, their intent to cause Plaintiff injury, their intent to disrupt

23   Plaintiff's business and client relations, and their intent to deprive Plaintiff of its Trade Secrets.

24        38.    Plaintiff has suffered damages and Defendants have been unjustly enriched in

25   amounts to be proven at trial as a direct result of Defendants' trade secret misappropriation.

26        39.    Defendants' trade secret misappropriation has caused and continues to cause

27   Plaintiff irreparable injury and cannot be fully redressed through damages alone.  An injunction

28   prohibiting Defendants from further use or disclosure of Plaintiff's confidential information and

1  Trade Secrets, and requiring the return thereof to Plaintiff, is necessary to provide Plaintiff with

2  complete relief.

3      40.    Defendants' misappropriation of Plaintiff's Trade Secrets has been willful and

4  malicious and entitles Plaintiff to an award of its reasonable attorneys' fees pursuant to Civil

5  Code section 3426.4.

6      41.    Defendants' misappropriation of Plaintiff's Trade Secrets has been willful and

7  malicious entitling Plaintiff to exemplary damages pursuant to Civil Code section 3426.3(c).

8      42.    Wherefore, Plaintiff prays for judgment as hereafter set forth, including for a

9  permanent injunction and punitive damages.

10     43.    WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

11                      **FOURTH CAUSE OF ACTION**

12   **(Violation of California Business and Professions Code Sections 17200, *et seq.* and**

13               **Permanent Injunction Against All Defendants)**

14     44.    Plaintiff realleges and incorporates the allegations of paragraphs 1 through 43,

15  above.  To the extent this claim is premised on Defendants' misappropriation of Plaintiff's trade

16  secrets, it is pled in the alternative to Plaintiff's third cause of action for Misappropriation of

17  Trade Secrets, and is otherwise independent.

18     45.    Defendants' conduct was unlawful, unfair, and/or fraudulent within the meaning of

19  California Business and Professions Code section 17200 *et seq*.  By way of example only,

20  Defendants' conduct constituted a violation of California Penal Code section 502.

21     46.    As a result of Defendants' unlawful, unfair, and/or fraudulent business practices,

22  Plaintiff has suffered injury in fact and will suffer further injury unless the wrongful  misconduct,

23  including the misappropriation of Plaintiff's confidential, proprietary, and trade secrets

24  information, is not prevented.

25     47.    Defendants have derived economic benefit from the possession of Plaintiff's

26  confidential, proprietary, and trade secrets information for an unfair business advantage to the

27  detriment of Plaintiff.  Plaintiff is entitled to restitution and/or disgorgement of profits directly

28  resulting from the damaging and disruptive practices of Defendants.

48.     Plaintiff further seeks injunctive relief prohibiting Defendants from further use or disclosure of Plaintiff's confidential information and Trade Secrets, and requiring the return thereof to Plaintiff, which is necessary to provide Plaintiff with complete relief.

49.     Wherefore, Plaintiff prays for judgment as hereafter set forth, including for a permanent injunction.

## FIFTH CAUSE OF ACTION

### (Conversion Against All Defendants)

50.     Plaintiff realleges and incorporate the allegations of paragraphs 1 through 49, above.  This claim is pled in the alternative to Plaintiff's third cause of action for Misappropriation of Trade Secrets.

51.     By virtue of their prior relationship with Plaintiff, Plaintiff provided Defendants with access to the confidential, proprietary, and trade secret information as alleged above. Defendants misappropriated (and/or aided and abetted each other in misappropriating) Plaintiff's confidential, proprietary, and trade secret information as alleged above.

52.     Plaintiff has not and does not consent to Defendants' misconduct.

53.     Plaintiff has been harmed by Defendants' misconduct and Defendants' misconduct was a substantial factor in causing this harm.

54.     The conduct of Defendants as herein alleged was intentional, wrongful and intended to deliberately disrupt Plaintiff's business and justifies an award of punitive damages in on amount sufficient to punish Defendants and to deter future conduct of this type.

55.     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Breach of Duty of Loyalty Against Defendants Eric Strong and Does 1-10)

56.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 55, above.

57.      By virtue of Defendants' employment with Plaintiff (including his access to confidential, proprietary, and trade secret information), Defendants' execution of a Business Protection Agreement with Plaintiff, Plaintiff's reposing of trust and confidence in Defendants'

-10-

integrity, Defendants' voluntary acceptance of that trust and confidence, and California law, including, without limitation, California Labor Code section 2863, Defendants entered into a confidential relationship with Plaintiff and owed Plaintiff a duty of loyalty.

58.     Defendants used their position of trust and confidence to further their own interests and breached their duty of loyalty to Plaintiff by engaging in the acts alleged herein.

59.     As a direct and proximate result of Defendants' breach of the duty of loyalty owed to Plaintiff, Plaintiff has suffered injury and harm in an amount according to proof, but in excess of the minimum jurisdiction of this court.  These amounts include, but are not limited to, salary and benefits Plaintiff paid to or for Defendants during the relevant time period.

60.     The conduct of Defendants as herein alleged was intentional, wrongful and intended to deliberately disrupt Plaintiff's business.  Defendants acted with the intent to cause injury to Plaintiff and/or with a willful and conscious disregard of Plaintiff's rights and with deceit or concealment of the material facts regarding his misconduct, Defendants' intent to cause Plaintiff injury, and their intent to disrupt Plaintiff's business and client relations, all with the intent to deprive Plaintiff of its clients, its confidential, proprietary, and trade secret information, its property, and its legal rights as mentioned above.  The aforementioned acts of Defendants were willful and malicious and justify an award of punitive damages in on amount sufficient to punish Defendants and to deter future conduct of this type.

61.     WHEREFORE, Plaintiff prays for judgment as set forth herein.

## SEVENTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations Against All Defendants)

62.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 61, above.

63.      In the course of its business, Plaintiff entered into multiple service agreements with third parties regarding the providing of wealth management services.

64.     At all relevant times, Defendants, and each of them, knew of Plaintiff's service agreements with third parties.

65.     Defendants intentionally interfered with Plaintiff's service agreements with third

Stoel Rives LLP
Attorneys At Law
Sacramento

96394990.2 0042482- 00003

1  parties by, amongst other things, inducing such third parties to violate and/or terminate their

2  service agreements with Plaintiff.  By engaging in this misconduct, Defendants prevented

3  Plaintiff from realizing the benefits it would have realized under its service agreement with Feld.

4        66.     As a direct and proximate result of the conduct of Defendants as alleged herein,

5  Plaintiff was damaged in an amount in excess of the jurisdictional minimums of this Court.

6        67.     The conduct of Defendants as herein alleged was intentional, wrongful and

7  intended to deliberately disrupt Plaintiff's business.  Defendants acted with the intent to cause

8  injury to Plaintiff and/or with a willful and conscious disregard of Plaintiff's rights and with

9  deceit or concealment of the material facts regarding his misconduct, Defendants' intent to cause

10  Plaintiff injury, and their intent to disrupt Plaintiff's business and client relations, all with the

11  intent to deprive Plaintiff of its clients, its confidential, proprietary, and trade secret information,

12  its property, and its legal rights as mentioned above.  The aforementioned acts of Defendants

13  were willful and malicious and justify an award of punitive damages in on amount sufficient to

14  punish Defendants and to deter future conduct of this type.

15        68.     WHEREFORE, Plaintiff prays for judgment as set forth herein.

16        **<u>EIGHTH  CAUSE OF ACTION</u>**

17        **(Fraud in the Inducement Against Defendants Eric Strong and Does 10)**

18        69.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 68,

19  above.

20        70.     Prior to entering into the Agreement, Defendants represented to Plaintiff that they

21  intended to fulfill and were in compliance with any and all of their obligations in the Agreement

22  including, without limitation, their obligations (1) to not misappropriate or induce

23  misappropriation any of Plaintiff's confidential, proprietary, or trade secret information and (2) to

24  not solicit Plaintiff's clients while still employed by Plaintiff.

25        71.     Defendants' representations and omissions to Plaintiff were material to Plaintiff's

26  decision to enter into the Agreement.

27        72.     Defendants knew or should have known that their representations and omissions to

28  Plaintiff were false.

1    73.  Defendants intended Plaintiff to rely and act upon their representations.

2    74.  Plaintiff remained unaware of the falsity of Defendants' representations and

3  material omissions until after they executed the Agreement, and could not have learned of the

4  falsity of these representations through the exercise of diligence on their part.

5    75.  Plaintiff reasonably relied on Defendants' representations.  As a direct and

6  proximate result of the conduct of Defendants as alleged herein, Plaintiff was damaged in an

7  amount in excess of the jurisdictional minimums of this Court.

8    76.  The conduct of Defendants as herein alleged was intentional, wrongful and

9  intended to deliberately disrupt Plaintiff's business.  Defendants acted with the intent to cause

10  injury to Plaintiffs and/or with a willful and conscious disregard of Plaintiff's rights and with

11  deceit or concealment of the material facts regarding their misconduct, Defendants' intent to

12  cause Plaintiff injury, and their intent to disrupt Plaintiff's business and client relations, all with

13  the intent to deprive Plaintiff of its clients, their confidential, proprietary, and trade secret

14  information, their property, and their legal rights as mentioned above.  The aforementioned acts

15  of Defendants were willful and malicious and justify an award of punitive damages in on amount

16  sufficient to punish Defendants and to deter future conduct of this type.

17    WHEREFORE, Plaintiff prays for judgment as set forth herein.

18
### NINTH CAUSE OF ACTION

19
**(Violation of California Penal Code Section 502 Against Defendants Eric Strong and Does**

20
**1-10)**

21    77.  Plaintiff realleges and incorporate the allegations of paragraphs 1 through 76,

22  above.

23    78.   Plaintiff is the owner of certain computers, computer systems, computer networks,

24  computer programs, and data including, without limitation, the confidential, proprietary, and trade

25  secret information alleged herein.

26    79.  Defendants have knowingly accessed and without permission taken, copied, and/or

27  made use of data from computers, computer systems, and/or computer networks owned by

28  Plaintiff in violation of California Penal Code section 502(c)(2).

80.     Defendants have knowingly and without permission provided or assisted in providing a means of accessing computers, computer systems, and/or computer networks owned by Plaintiff in violation of California Penal Code section 502(c)(6).

81.     Defendants have knowingly and without permission accessed or caused to be accessed computers, computer systems, and/or computer networks owned by Plaintiff in violation of California Penal Code section 502(c)(7).

82.     Defendants have knowingly and without permission provided or assisted in providing a means of accessing computers, computer systems, and/or computer networks owned by Plaintiff in violation of California Penal Code section 502(c)(13).

83.     All of these acts have been done in violation of Plaintiff's rights and in violation of California Penal Code section 502.

84.     Defendants aided and abetted each other in engaging in this misconduct.

85.     Plaintiff has suffered and continues to suffer damage as a result of Defendants' violations of the California Penal Code sections identified above.  These damages include, without limitation, cost and fees related to engaging third-party vendors to investigate the scope of Defendants misconduct as alleged herein.

86.     Defendants' conduct also has caused irreparable and incalculable harm and injuries to Plaintiff and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

87.     Defendants willfully violated California Penal Code Section 502 in disregard and derogation of Plaintiff's rights and their actions as alleged above were carried out with oppression, fraud, and malice.

88.     Pursuant to California Penal Code Section 502(e), Plaintiff is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees and costs, and other equitable relief.

WHEREFORE, Plaintiff prays for judgment as set forth herein.

**PRAYER FOR RELIEF**

1.     For general and special damages in accordance with proof at trial;

Stoel Rives LLP
Attorneys At Law
Sacramento

96394990.2 0042482- 00003

2.      For interest on any and all damages according to proof at trial;

3.      For prejudgment interest;

4.      For attorney's fees and costs as permitted by law;

5.      For punitive and exemplary damages;

6.      For treble damages;

7.      For a temporary restraining order and preliminary injunction prohibiting Defendants from the further misappropriation or use of any of Plaintiff's confidential and trade secret information and requiring the return to Plaintiff of all such information;

8.      For a temporary restraining order and preliminary injunction prohibiting Defendants from destroying any evidence including, without limitation, electronic evidence pertaining to their misappropriation of Plaintiff's confidential, proprietary, trade secret information;

9.      For a permanent injunction prohibiting Defendants from the further misappropriation or use of any of Plaintiff's confidential and trade secret information and requiring the return to Plaintiff of all such information;

10.     For a permanent or temporary injunction prohibiting Defendants from performing any work from any current or prospective clients of Plaintiff at the time of the misappropriation;

11.     For a reasonable royalty for the unauthorized misappropriation of Plaintiff's confidential, proprietary, and trade secret information;

12.     For general and compensatory damages for Defendants' unauthorized use of Plaintiff's property (including intellectual property), and conduct causing damages to Plaintiff as herein alleged above; and

13.     For such other and further relief as the Court may deem proper.

1

2

Dated: June XXXX, 2021                           STOEL RIVES LLP

3

4                                                By: _____
                                                     BRYAN L. HAWKINS
5                                                    Attorneys for Plaintiff Brighton Jones,
                                                     LLC, a Washington limited liability
6                                                    company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28